**Frank B. Thomas Trust**
v.
**Imperial 400 National**
*[Cite as 2 AOA 475]*

476

Case No. 14202
Summit County, (9th)
Decided March 28, 1990

Frederick M. Lombardi and Scott E. Allbery, Attorneys at Law, 50 S. Main St., P. O. Box 1500, Akron, OH 44309 for plaintiffs.

James W. Slater, Attorney at Law, 1000 Society Bldg. Akron, OH 44308 for defendant.

MITROVICH, J.

Appellant Imperial 400 National, Inc. (Imperial) brings this appeal from a summary judgment rendered in favor of appellee Frank B. Thomas Trust (Thomas) in the Court of Common Pleas, Summit County, upon an action for breach of the parties' lease agreement. We affirm.

### FACTS

On July 17, 1972, Frank B. Thomas and Elizabeth K. Thomas, predecessors to the appellee-lessors, and Imperial, as lessee, entered into a sixty-five (65) year commercial lease commencing November 1, 1963, for property located in Akron, Ohio. The rental amount was Six Hundred and Fifty Dollars ($650.00) per month. The lease provided for automatic rental adjustment every ten years predicated upon a nationally recognized consumers price index.

When the first increase was to become effective, in November or 1973, neither party enforced the adjustment provision and rent remained at its original amount. Imperial then assigned its interest to a third party in 1980 and Thomas collected the base rent the third party-assignee.[1] Again in 1983, there was no enforcement of the rental adjustment provision and Thomas continued to accept the base rent of Six Hundred and Fifty ($650.00) dollars.

Finally in 1987, Thomas' attorney sent a letter to Imperial notifying the appellants that it was in arrears with respect to the rental increase from November 1, 1983, to the present date and the future rent would be adjusted in accordance with the lease's rental increase provision.[2]

Thomas then brought this action against Imperial, seeking to recover the arrearages in the sum of Ninety-Seven Thousand, One Hundred Seventy-One and 44/100ths Dollars ($97,171.44) representing an increase of One Thousand Four Hundred Fifty and 32/100ths Dollars ($1,450.32) per month over the base rent. Imperial asserted the defenses of waiver, estoppel and laches based upon Thomas' failure to enforce the rental increase within reasonable amount of time.

The court below summarily rejected Imperial's defenses and granted Thomas' summary judgment, from which Imperial assigns three errors.

### ASSIGNMENT OF ERROR I

"In rejecting appellant's equitable defenses of waiver, estoppel and laches, the trial court erroneously relied on a case wherein none of those defenses were ever addressed, and the trial court's judgment was therefore contrary to law."

The central issue on appeal is the enforceability of the self-executing rental increase provision found in the lease agreement. This provision is found in Paragraph 2(a) of the lease and it provides as follows:

"At the end every ten (10) year period during the term of this lease, the rent shall be adjusted for the following ten (10) year period by the percentage change of the U.S. Department of Labor Wholesale Commodity Price Index (or a comparable index replacing such U.S. Bureau of Labor Index) from the latest figure published prior to the date of this lease to the last figure published prior to the start of each such ten (10) year period."

At the time of the execution of the lease, the Department of Labor, Bureau of Labor Statistics, published an index known as the Wholesale Price Index, which was the basis for the lease's rent adjustment provision. The Wholesale Price Index has been replaced with the Producer Price Index, which the parties have agreed as the proper index to use under Paragraph 2(a) of the lease.

The lower court relied on *Executive Properties Inc.* v. *Warmee* (December 19, 1979), Summit App. No. 2877, unreported, in granting Thomas summary judgment. In *Executive Properties*, this court held that a lease's language stating that the rent "shall be increased" made a rental increase automatic. The rental increase was enforceable even though the lessor did not make any demand until the

lease term had already expired. This court reasoned that the language "shall be increased" created an affirmative duty on the part of the lessee to tender the amount even after the lease's expiration and, therefore, the lessor need not make an affirmative demand for the increased rent. *Executive Properties Inc., supra.*

In contrast, the court in *Westgate Village Realty Trust* v. *Berry* (June 26, 1981), Lucas App. No. L-80-304, unreported, found that a rental clause providing for rent increases from "time to time" did not connote meaning automatic increases in rent upon a specified date.

Furthermore, assuming *arguendo* that the appellee was required to make an affirmative demand upon Imperial for the increased payments, the language in Paragraph 10 of the lease contractually prevents Imperial from arising waiver as an affirmative defense. Paragraph 10 reads as follows:

"Imperial agrees that any waiver by lessor of the performance of any one of the conditions of this lease shall not be deemed to constitute a waiver of the right of the lessor to proceed against Imperial upon any subsequent breach of the same or other conditions of this lease."

Appellant does not offer any arguments rebutting the application of this lease provision.

Finally, the record reveals that the lease was drafted by Imperial and the self-executing rental increase provision was initialed by an authorized officer of Imperial. It is a fundamental general rule of construction that if there is ambiguity in the contract language, the agreement is to be strictly construed against the party responsible for its preparation. *Central Realty Co.* v. *Cutter* (1980), 62 Ohio St. 2d 411, 413. This rule of construction is given greater weight when a commercial transaction is involved and the parties, as is the present case, have commercial identities.

We continue to follow the rule developed in *Executive Properties* with regard to the enforceability of automatic rental increase provisions. This rule coupled with the lease's "anti-waiver clause" quashes the defenses raised by Imperial. Accordingly, appellant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

"The trial court erred in granting summary judgment to appellees-lessors because appellees' fourteen-year failure to assert any claim under the rental increase clause gave rise to a genuine issue of material fact as to whether appellees' claim was barred by waiver, estoppel or laches.

Imperial argues that summary judgment was improper because there was sufficient evidence of material fact surrounding the defenses of waiver, estoppel and laches. The parties did not supply affidavits or other evidence in support of their respective positions on summary judgment. The court below relied on a variety of factors in rejecting the raised affirmative defenses and granting Thomas summary judgment. The court considered the court's prior finding and order, the oral arguments and statements of counsel, the pleadings and the admissions of Imperial.[3]

The United States Supreme Court, in *Celotex v. Catrett* (1986), 477 U.S. 317, addressed the quality of proof necessary in summary judgment cases. *Celotex* states that:

"***a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material facts ***. *Id.* at 323

The requirement that a party seeking summary judgment disclose the basis for the motion and support the motion with evidence that no genuine issue exists as to any material fact falls upon the moving party is well established in Ohio law. The Ohio Supreme Court, in *Mitseff* v. *Wheeler* (1988), 38 Ohio St. 3d 112 (citations omitted) held that requiring a moving party to provide specific reasons and evidence creates a reciprocal burden of specificity for the non-moving party and therefore, an adverse party may not rest upon the mere allegations or denial of its pleadings. *Id.* at 115.

Turning to the case at bar, Imperial claims that the defenses of waiver, estoppel and laches inherently present questions of fact. An examination of the facts surrounding each raised affirmative defense reveals Imperial's failure to create any material factual dispute. Waiver requires a voluntary relinquishment of a known legal right which may arise by contract. *Motz v. Root* (1934), 53 Ohio App. 375, 376. As previously stated, a lease containing a self-executing rental increase provision does not impose an obligation on the lessor to demand the increased rent. Since no demand was required, the failure until 1987 to affirma-

tively make such demand cannot be taken as an act of affirmative waiver. Furthermore, the "anti-waiver" language in paragraph 10 of the lease precludes the waiver defense.

There is also no evidence that Imperial can show a material factual dispute regarding the estoppel defense. The rule of estoppel is:

"***one party will not be permitted to deny that which ,by his words, his acts, or his silence when there is a duty to speak, he has induced a second party reasonably and in good faith to assume and rely upon that party's prejudice or pecuniary disadvantage.***." *First Federal Savings and Loan Association v. Perry's Landing, Inc.*(1983), 11 Ohio App. 3d 135, 145.

Imperial fails to demonstrate any representation on which they have detrimentally relied. The period of time at issue is not fourteen (14) years, as appellant claims, but is from November of 1983 to the end of August, 1987, a period of three (3) years and ten (10) months. There is nothing in the record to support Imperial's argument that had it known that rental increases were forthcoming, it or its assignees would have increased the charges to the public. This argument is without merit because Imperial and its assignees have actually had the benefit of charging competitive rates while at the same time paying the same base rent amount for over twenty-five (25) years.

Imperial also fails to factually support the affirmative defense of laches. Laches is an equitable doctrine applicable when negligence or omission to assert a right results in prejudice to the adverse party. *Smith* v. *Smith* (1959), 18 Ohio St. 447. The material prejudice cannot be shown by mere delay. *Thirty-Four Corp. v. Sixty-Seven Corp. (1984), 15 Ohio St. 3d 350, 354 citing* Smith, supra. We find that the appellant did not go beyond mere assertions that it was materially prejudiced by introducing specific facts as required by Ohio summary judgment standards.

This court has held that although a party seeking summary judgment must inform the trial court of the basis for its motion, the movant need not necessarily support its motion with evidentiary materials which directly negate its opponent's claim. *Johnson v. American Ins. Co.* (1988), 44 Ohio App. 3d 71, 72 citing *Celotex, supra*. Upon review of the record, we find that Thomas, as the movant, has met its burden under Civ. R. 56 by showing an absence of evidence to support Imperial's case. Accordingly, the second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

"The trial court erred in basing the amount of judgment on calculations submitted in an unsworn letter from appellees' submitted in an unsworn letter from appellees' counsel to the trial judge, especially in light of appellant's dispute as to the factual basis thereof."

In *Executive Properties, supra,* this court found that the trial court erred in not taking judicial notice of the Consumer Price Indices, applying the indices according to the language of the lease, and awarding the appropriate rental increase. This court then calculated the proper rental increase.

As in *Executive Properties, the base rent, the appropriate index figures and the lease's unambiguous language are properly before the court and all that was necessary was an application of the relevant data to the rental increase provision of the lease.*

*The decision regarding the proper rental increase was based upon the pleadings and admissions of the parties containing all the necessary information to calculate the increase. The appellee's letter to the trial judge was simply used to verify the rental calculation. There is no evidence that the trial court improperly on any unsworn material. When there is no evidence of irregularity, a presumption of regularity applies to the trial court's actions.* Meinhard Commercial Corp. v. Spoke & Wheel, Inc. 1977), 52 Ohio App. 2d 198, 201.

The lower court properly calculated the judgment in the amount of Ninety-Seven Thousand, One Hundred Seventy-One and 44/100ths Dollars ($97,171.44) for the past-due rental increase for the period of November 1, 1983, through June 1, 1989, and declared that under Paragraph 2(a) of the lease, the amount of One Thousand Four Hundred Fifty and 32/100ths ($1,450.32) was the proper increase amount due over the above the base rent until November 1, 1993. Accordingly, appellant's third assignment of error is denied.

## SUMMARY

The granting of summary judgment in appellee's favor was in all respects proper and the judgment of the court below is affirmed.

*Judgment affirmed.*

CACIOPPO, P. J.
Concurs in judgment only

QUILLIN, J.
Dissents

(MITROVICH, J., Judge of the Common Pleas Court of Lake County, sitting by assignment pursuant to Article IV, Section 5(A) (3), Constitution).

<sup>1</sup> Paragraph 13 of the lease agreement states that Imperial is not relieved of its obligation to pay rent in the event of an assignment.
<sup>2</sup> Initially, Thomas sought to enforce the rental increase retroactively from November of 1973. However, the amended complaint only sought arrears from November of 1983.
<sup>3</sup> Procedurally, the first common pleas judge, now retired, denied Thomas' motion for summary judgment for failing to join the assignee in the lawsuit. However, the order denying the summary judgment motion stated that *Executive Properties* was the controlling authority. The judge reassigned to the case, considered the prior finding and order along with the other factors in granting Thomas' subsequent motion to reconsider summary judgment.